UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

THE SMILEY COMPANY SPRL, LLC, and
SMILEY LICENSING CORPORATION, LTD.,

    Plaintiffs,

v.

THE INDIVIDUALS, PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

    Defendants.
_____/

**DECLARATION OF NICOLAS LOUFRANI IN SUPPORT OF PLAINTIFFS'
EX PARTE MOTION FOR ENTRY OF TEMPORARY RESTRAINING ORDER,
PRELIMINARY INJUNCTION, AND ORDER RESTRAINING TRANSFER OF ASSET**

I, Nicolas Loufrani, declare and state as follows:

1. I am over 18 years of age and I have personal knowledge of the facts set forth herein. I make this declaration in support of Plaintiff's *Ex Parte* Motion for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets (the "Motion for TRO"). If called upon to do so, I could and would competently testify to the following facts set forth below.

2. I am employed by Plaintiffs, The Smiley Company SPRL, LLC and Smiley Licensing Corporation, Ltd. (collectively, "Smiley"), as CEO. I am responsible for anti-counterfeiting and anti-infringement efforts in connection with Internet related matters for Smiley and am fully familiar with most aspects of the design and distribution of genuine products bearing the Smiley trademarks, copyrights, and branding. Through years of experience and discussions with the product design team, I can identify the distinctions between genuine branded merchandise and counterfeit and/or infringing copies of the same.

## The History of the Smiley Logo

3.	In or about 1971, Franklin Loufrani had foregone college and joined his first newspaper at 19. While working for the paper France-Soir, Mr. Loufrani became tired of the constant stream of negative news and decided to design a symbol that would highlight positive stories to readers, resulting in the creation of the following iconic yellow circle, two dots, and a smile (the "Smiley Logo") which retained relevancy through 50 years of cultural movements, from free love to raves to the digital revolution.



4.	Throughout the 1970's, the Smiley Logo became a beacon and one of the leading icons of the peace and love culture during this decade of economic, political, and social unrest. Providing a much-needed morale boost during this turbulent time, the Smiley Logo was adopted by political communities and used as a symbol of freedom and hope across art and music festivals around the world.

5.	The Smiley Logo's influence grew alongside emerging musical subcultures, becoming the symbol of the electronic music movement, which continued into the 1990's. Printed on everything from stickers, t-shirts, ticket stubs, flyers and shoelaces – this visual shorthand was latched onto by a new hedonistic popular culture.

6. With the advent of the internet, laptops, and eventually smartphones, the enduring cultural impact of the Smiley Logo was embraced by a new digital generation. Well ahead of his time, Smiley's co-founder Nicolas Loufrani created a new universal form of digital communication by adding a variety of facial expressions to the original Smiley Logo. These emoticons inspired a visual-communication revolution and are now sent around the world daily, at an infinite pace.

7. Continuing to influence modern culture, as one of the world's top global collaboration licensing brands, Smiley has collaborated on high profile activities spanning fashion, art, beauty, homeware, food and beverage. Famous artworks have included street artist Banksy's Policeman (2003) and Grim Reaper (2005). Major partnerships include Supreme, Armani, Loewe, Zara, Moschino, Raf Simons, H&M, Eastpak, Dsquared2 and Adidas.

8. In 2022, Smiley celebrated turning 50 with the launch of a global campaign to revive its original mantra: "Take the Time to Smile." The initiative saw Smiley partner with over 60 brands and retailers from around the globe on exhibitions, custom music tracks, product collections and immersive experiences. In the same year Smiley announced the launch of Future Positive, an industry first-of-its-kind campaign working with other global brands at tackling worldwide social and climate injustice through product transparency and sustainability.

**Plaintiff's Trademark Rights and Copyrights**

9. Smiley is the owner of the trademarks identified on Schedule "B" hereto (the "Smiley Marks"), which are valid and registered on the Principal Register of the United States Patent and Trademark Office.

10. Smiley is the owner of the copyrights identified on Schedule "C" hereto (the "Smiley Copyrighted Works"), which are valid and registered with the United States Copyright Office.

11. The Smiley Marks and Copyrighted Works are used in connection with the design, marketing, and distribution of various products in the categories identified on Schedule "B."

12. High-quality products under the Smiley Marks and Copyrighted Works are designed, marketed, and distributed in interstate commerce, including within this judicial district.

13. Genuine Smiley products are marketed and sold at authorized brick and mortar retail locations throughout the United States, including within the State of Florida and this District. Genuine Smiley products are also sold in the United States via the Internet on https://www.smiley.com and various other authorized distributors' websites. During the time that genuine Smiley products have been sold in interstate commerce, considerable investments have been made to extensively advertise and promote goods in connection with the Smiley Marks and Copyrighted Works.

14. The Smiley Marks and Copyrighted Works have never been abandoned and are actively licensed, policed, and enforced. The Smiley Marks and Copyrighted Works are vital to Smiley's business, as the trademarks and copyrights uphold the image and reputation of the brand and associated products of outstanding quality, design, and performance. Smiley suffers irreparable harm to the goodwill of its brand as well as direct monetary loss any time third parties, including Defendants, sell counterfeit goods using identical or substantially similar trademarks and/or unauthorized copies.

**Investigation of Defendants' Counterfeiting Activities**

15. I discovered Defendants were promoting, advertising, offering for sale and/or selling goods using the Smiley Marks and/or Copyrighted Works without authorization, via Internet

based e-commerce stores operating under the seller identities identified on Schedule "A" to the Complaint (the "Seller IDs"). Defendants do not have, nor have they ever had, the right or authority to use the Smiley Marks or Copyrighted Works. Further, the Smiley Marks and Copyrighted Works have never been assigned or licensed to be used in connection with any of the Seller IDs. The Smiley Marks and Copyrighted Works have been used in commerce well before the promotion and sale of Defendants' unauthorized and counterfeit goods in the U.S.

16. As part of my investigation regarding the sale of counterfeit Smiley branded products, I retained a third-party to investigate the suspected sales of counterfeit Smiley branded products by Defendants.

17. Prior to filing this action, my investigator accessed the Internet based e-commerce stores operating under Seller IDs and placed orders for the purchase of various products offered for sale bearing, or suspected to be bearing, at least one of the Smiley Marks and Copyrighted Works at issue in this action from each Defendant. At the conclusion of the process, I received detailed web page captures and photographs of the Smiley branded items wherein orders were initiated via Defendants' Seller IDs.

18. Prior to filing this Declaration, I personally analyzed the Smiley branded items wherein orders were initiated via each of the Seller IDs by reviewing the e-commerce stores operating under each of the Seller IDs, or the detailed web page captures and images of the items bearing the Smiley Marks or Copyrighted Works, and I concluded the products were non-genuine, unauthorized Smiley products. I reached this conclusion through my observations of the products' prices, which are often well below the prices of similar genuine Smiley branded goods, and certain product and marking characteristics which are not consistent with genuine Smiley products.

Moreover, Smiley does not conduct business with Defendants, nor have the Smiley Marks or Copyrighted Works ever been assigned or licensed to be used by Defendants.

**Harm Caused to Smiley by Defendants' Activities**

19. Genuine Smiley branded goods are widely legitimately advertised, promoted, offered for sale, and distributed by Smiley, authorized distributors, and unrelated third parties via the Internet.

20. Over the course of the past several years, visibility on the Internet, particularly via Internet search engines such as Google, Yahoo! and Bing, has become increasingly important to Smiley's overall marketing and consumer education efforts. Thus, the company has expended significant monetary resources on Internet marketing and consumer education regarding the brand and products, including search engine optimization ("SEO") strategies, which allows the fair and legitimate education of consumers about the value associated with the Smiley brand and the goods sold thereunder, as well as the problems associated with the counterfeiting or infringement of the Smiley Marks and Copyrighted Works.

21. By engaging in advertising and marketing strategies based upon an illegal use of the Smiley Marks and Copyrighted Works, including leveraging the SEO power of online marketplace platforms, Defendants are obliterating the otherwise open and available marketplace space in which Smiley has the right to fairly market its goods and associated message. Specifically, many Defendants use unauthorized counterfeits or infringing copies of the Smiley Marks and Copyrighted Works in order to make their e-commerce stores appear more relevant and attractive to consumers searching for my Smiley related goods and information online. Such illegal use results in unfair competition of the brand when competing for visibility on the World Wide Web, including within search engine results space.

22. As a result of the availability of the non-genuine Smiley branded goods being offered for sale by Defendants, Smiley is highly likely to experience irreparable damage to its reputation among consumers unless the infringing and counterfeiting activity alleged in the Complaint is stopped.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed the _____ day of _____, 2023, at _____.

June 13, 2023 | 15:17 PM BST

London

DocuSigned by:

F374664E2D4D418...

7