**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 23-CV-23799-RAR**

THE SMILEY COMPANY SPRL,

      Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

      Defendants.

_____/

**SEALED ORDER GRANTING PLAINTIFF'S *EX PARTE* APPLICATION**
**FOR ENTRY OF TEMPORARY RESTRAINING ORDER AND SETTING**
**A HEARING ON MOTION FOR PRELIMINARY INJUNCTION**

**THIS CAUSE** comes before the Court on Plaintiff's *Ex Parte* Motion for Entry of

Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets

("Application for Temporary Restraining Order"), [ECF No. 5], against various Defendants[1] under

15 U.S.C. § 1116, Federal Rule of Civil Procedure 65, 28 U.S.C. § 1651(a), and the Court's

inherent authority, for alleged violations of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a).  As

explained below, Plaintiff has satisfied the requirements for the issuance of a temporary restraining

order.

**BACKGROUND**[2]

Plaintiff is the owner of the following trademarks, which are valid and registered on the

Principal Register of the United States Patent and Trademark Office ("Smiley Marks"):

---

[1]   Defendants are the Individuals, Business Entities, and Unincorporated Associations identified on Schedule "A," [ECF No. 5-1].

[2]   The factual background is taken from Plaintiff's Complaint, [ECF No. 1], Plaintiff's Application for Temporary Restraining Order, [ECF No. 5], and supporting evidentiary submissions.

| Trademark | Registration Number | Registration Date | Classes / Goods |
|---|---|---|---|
| SMILEY | 2,747,618 | 08/05/2003 | IC 003. US 001 004 006 050 051 052. G & S: non-medicated cosmetic preparations for slimming purposes, namely, skin creams, skin lotions, [skin pomades, rust removing preparations,] sun-tanning preparations for cosmetic purposes, [fabric softeners for laundry use, shaving soap, cotton sticks for cosmetic purposes, skin whitening creams, laundry bleach, scented wood, floor polish, hair color, hair dyes, hair waxing lotions, artificial eyelashes, shoe care products, namely, shoe wax, shoe polish, and shoe cream, depilatory wax, parquet floor wax, polishing wax for use on furniture and automobiles, leather preservatives, namely, polishing creams and waxes, cosmetic kits comprised of eyelash pencils, eyelid pencils, namely], shampoos, [drain openers, general purpose scouring powders, decolorants for cosmetic purposes, namely, hair decolorants, degreasing preparations not used in the manufacturing process for use on floors, make-up removing preparations, depilatory creams, stains removers, paint removers, rust and mineral removing cleaning preparations, laundry detergents,] toilet water, [anti-static dryers sheets, emery paper, emery cloth, emery boards, polish for furniture and flooring, incense, windscreen cleaning preparations,] essentials oils for personal use[, hair lacquer, hair bleaching preparations, sachets for perfuming linen, hair lotions, false nails, cotton balls for cosmetic purposes, abrasive paper for use on the nails, wallpaper cleaning preparations, paint stripper, pumice stones for personal use, adhesives for |

| | | | |
|---|---|---|---|
| | | | cosmetic use, namely, adhesives for use in connection with artificial hair, shaving preparations, varnish-removing preparations]. FIRST USE: 20010226. FIRST USE IN COMMERCE: 20010226 |
| SMILEY | 2,566,529 | 05/07/2002 | IC 028. US 022 023 038 050. G & S: Toys, namely plush stuffed toys and plastic balls, latex balls and squeezable balls [ ; sporting goods, namely knee pad ]. FIRST USE: 19880516. FIRST USE IN COMMERCE: 19880516s |
| SMILEY | 5,453,732 | | IC 003. US 001 004 006 050 051 052. G & S: Bubble bath, Deodorants for personal use, lotions, false nails. FIRST USE: 20150401. FIRST USE IN COMMERCE: 20180125<br>IC 004. US 001 006 015. G & S: candles. FIRST USE: 19720717. FIRST USE IN COMMERCE: 20180125<br><br>IC 005. US 006 018 044 046 051 052. G & S: Food for babies, adhesive bandages, air deodorant, feminine hygiene pads, additive for nutritional purposes, sanitary napkins, car deodorants, vitamin supplements; babies' disposable diapers. FIRST USE: 19720717. FIRST USE IN COMMERCE: 20180125<br><br>IC 006. US 002 012 013 014 023 025 050. G & S: metal keys for locks. FIRST USE: 19720717. FIRST USE IN COMMERCE: 20180125<br><br>IC 008. US 023 028 044. G & S: Spoons, hand tools, beard clippers, scissors, nail clippers, hair removing tweezers, ice picks, nail files, manicure sets, hammers, pedicure sets, pliers, electric and non-electric razors, screwdrivers and drills; electric and non-electric flat irons. |

| | | | |
|---|---|---|---|
| | | | FIRST USE: 19720717. FIRST USE IN COMMERCE: 20180125<br><br>IC 009. US 021 023 026 036 038. G & S: Weighing apparatus, scales, calculating machines, sound amplifiers, anti-glare glasses, computer terminals, electric, neon or luminous signs, photographic cameras, magnetic encoded cards, cartridges for video games, life jackets, computer keyboards, electrical connectors, contact lenses, electrical sockets, eyeglass cases, blank magnetic data carriers, fire extinguishers, loudspeakers, telephone apparatus, sunglasses, computer memories, computer peripheral mouse pads, computer mouse, television sets, video cameras, and video game cartridges. FIRST USE: 20121201. FIRST USE IN COMMERCE: 20180125<br><br>IC 014. US 002 027 028 050. G & S: Precious metals and their alloys sold in bulk, clocks, works of art of precious metal, jewelry, jewelry boxes, earrings, watches, bracelets, cuff links, brooches, necklaces. FIRST USE: 20150601. FIRST USE IN COMMERCE: 20180125<br><br>IC 016. US 002 005 022 023 029 037 038 050. G & S: Adhesive tapes for stationery or household purposes, posters, photo albums, scrapbooks, lithographic prints, stickers, loose-leaf binders, boxes of cardboard or paper, rubber stamps, calendars, printing sewing patterns, note books, business cards, postcards, tags for index cards, iron-on transfers and plastic transfers, decalcomanias, graphic art reproductions, stationery folders, writing materials, namely, note books, post cards, ball-point |

|  |  |  | pens, anniversary books, appointment books, autograph books, baby books, sketch books, sketch pads, bookmarks, daily planners, date books, address books, diaries, engagement books, envelopes, electric and non- electric erasers, fountain pens, pen or pencil holders, pen or pencil trays, pencils, artists' pencils, drawing pencils, pencil boxes, pencil cases, pen cases, stationery, and envelopes, rubber erasers, wrapping paper, pencils, stationery envelopes, blank or partially printed paper labels, announcement cards, writing paper, school supplies, namely, notebooks, pencil cases, toilet paper, pictures, printed matter, namely, magazines in the field of art, lithographs, table linen of paper, handkerchiefs of paper, stationery, paper stationery, paper banners, paper bags, unmounted photographs, art prints, pen and pencil trays, printed publications, namely, magazines, newspapers, graphic art reproductions, plastic or paper envelopes, bags and pouches for merchandise packaging, writing pads, fountain pens, and paper or plastic transparencies, paper towels, embroidery design patterns, table mats of paper, pencil sharpeners. FIRST USE: 20130901. FIRST USE IN COMMERCE: 20180125<br><br>IC 021. US 002 013 023 029 030 033 040 050. G & S: Combs, toilet brushes, water troughs, thermal insulated containers for food, terra-cotta or glass, figurines, table plates not of precious metal, brooms, cocktail picks, drinking flasks for travelers, drinking vessels, beer mugs, soap boxes, dispensing paper towels for household use, non- |
| --- | --- | --- | --- |

| | | | |
|---|---|---|---|
| | | | electric kettles, bottles sold empty, bottle openers, pitchers not of precious metal, non-electric toothbrushes, perfume burners, coffee services, not of precious metal, egg cups not of precious metal, beverage glassware, jugs, cookery molds, cooking utensils, toothpicks, cutting boards for the kitchen, trivets, toilet paper holders, soap dispensers, sponges for household purposes, scouring sponges for toilets, earthenware basins in the nature of bowls, household utensils, flower pots; gloves for household purposes, gloves for gardening, ice buckets, non-electric portable coolers for food and beverages, goblets, not of precious metal, mugs, not of precious metal, bottle- gourds, not of precious metal, crumb trays, dishes, soap holders, sponge holders, ironing boards, pepper shakers, garbage cans, trash cans, napkin rings, thermal insulated bags for food or beverages, statutes, statuettes, table plates, napkin holders, non-metal piggy banks, earthenware mugs, drinking glasses, tableware services not of precious metal. FIRST USE: 20130901. FIRST USE IN COMMERCE: 20180125<br><br>IC 025. US 022 039. G & S: Clothing, namely, suits, dresses, t-shirts, sweatshirts, raincoats, shorts, stockings, cloth bibs, berets, hosiery, boots, suspenders, pants, baseball caps, golf caps, athletic shoes, masquerade costumes, hats, babies pants, neckties, sashes for wear, scarves, gloves, layettes, slippers, ear muffs, aprons, sportswear, namely, jogging suits, and training suits. FIRST USE: 20121201. FIRST USE IN COMMERCE: 20180125 |

| | | | |
|---|---|---|---|
| | | | IC 026. US 037 039 040 042 050. G & S: Hair accessories, electric hair curlers. FIRST USE: 19720717. FIRST USE IN COMMERCE: 20180125 |
| | | | IC 027. US 019 020 037 042 050. G & S: carpets. FIRST USE: 20141201. FIRST USE IN COMMERCE: 20180125 |
| | | | IC 028. US 022 023 038 050. G & S: Games, playthings, namely, toys in the nature of flying disks, sporting articles, golf balls, handballs, playground balls, soccer balls, baseballs, basketballs, bowling balls, footballs, tennis balls, rubber balls, sports balls, table tennis balls, volley balls, beach balls balloons, toys, namely, jigsaw puzzles; Christmas tree ornaments, party favors in the nature of small toys; namely, confetti. FIRST USE: 20121201. FIRST USE IN COMMERCE: 20180125 |
| | | | IC 029. US 046. G & S: Meat. FIRST USE: 19720717. FIRST USE IN COMMERCE: 20180125 |
| | | | IC 030. US 046. G & S: Sugar, pasta, corn flakes, chewing gum. FIRST USE: 20170301. FIRST USE IN COMMERCE: 20180125 |
| | | | IC 032. US 045 046 048. G & S: Mineral and aerated waters, fruit juices. FIRST USE: 19720717. FIRST USE IN COMMERCE: 20180125 |
| | | | IC 034. US 002 008 009 017. G & S: Cigarette cases, cigarette lighters, ashtrays not of precious metal, cigarette holders, not of precious |

| | | | |
|---|---|---|---|
| | | | metal, ashtrays of precious metal for smokers. FIRST USE: 20141201. FIRST USE IN COMMERCE: 20180125<br><br>IC 035. US 100 101 102. G & S: Advertising and marketing. FIRST USE: 20150601. FIRST USE IN COMMERCE: 20180125<br><br>IC 036. US 100 101 102. G & S: Credit card services, monetary exchange. FIRST USE: 19720717. FIRST USE IN COMMERCE: 20180125<br><br>IC 038. US 100 101 104. G & S: Telecommunication services, namely, personal communication. FIRST USE: 20170701. FIRST USE IN COMMERCE: 20180125 |
| SMILEY | 2,970,055 | 07/19/2005 | IC 003. US 001 004 006 050 051 052. G & S: Soaps, bath gels, makeup, perfumes, body lotions, nail care preparations, cosmetic preparations for skin renewal, hair shampoos, hair gel. FIRST USE: 20010226. FIRST USE IN COMMERCE: 20010226 |
| SMILEY | 3,016,430 | 11/15/2005 | IC 009. US 021 023 026 036 038. G & S: Downloadable computer software program for use in attaching, icons or other symbols, in e-mail correspondence and instant messaging. FIRST USE: 20001200. FIRST USE IN COMMERCE: 20001200 |
| SMILEY | 2,801,529 | 12/30/2003 | IC 025. US 022 039. G & S: Clothing, namely, pullovers, [trousers] and shirts. FIRST USE: 19700000. FIRST USE IN COMMERCE: 19700000 |

| | | | |
|---|---|---|---|
|  | 5,348,135 | 12/05/2017 | IC 016. US 002 005 022 023 029 037 038 050. G & S: Printed matter, namely, children's books, stationery, greeting cards, note cards, post cards, posters, newspapers, printed calendars, printed forms, printed invitations, photo albums, scrapbooks, photographs; bookbinding materials, namely, bookbinding papers or cloth, bookbinding adhesive tape or glue; adhesive tapes for stationery or household purposes; artists' materials, namely, artists' paintbrushes, typeset printing blocks, printing type, art pads, art paper, paper, cardboard, dressmaking patterns, drawings, watercolors, paintings both framed and unframed; lithographic or engraved art objects; writing implements, namely, pens, pencils, fountain pens, artists' pencils; drawing instruments, namely, charcoal pencils, drawing pencils, pencil cases; typewriters and office requisites except furniture, namely, magnetic boards, file folders, desktop stationery cabinets; Printed instructional, educational, and teaching materials in the field of primary education; cardboard or paper boxes; paper products, namely, paper handkerchiefs, paper towels, paper table linen, toilet paper, babies' disposable napkins of paper and cellulose; bags, namely, paper or plastic for use as gift bags, paper bags or pouches, paper and plastic bags for merchandise packaging purposes, paper and plastic garbage bags; pamphlets in the field of fashion, home, decorating and licensing; prospectuses in the field of fashion, home, decorating and licensing<br><br>IC 018. US 001 002 003 022 041. G |

| | | | |
|---|---|---|---|
| | | | & S: Leather and imitation leather, animal skins and hides; trunks and suitcases; umbrellas, parasols and walking sticks; whips, harness and saddlery; wallets, purses not of precious metal; handbags, backpacks, wheeled bags; sports bags for climbers; sports bags for campers; traveling bags, beach bags, school bags, unfitted vanity cases; collars and clothing for animals, namely, pet clothing and collars; mesh shopping bags, mesh shopping nets for use in an automobile; leather bags or pouches |
| SMILEY | 6,428,755 | 05/14/2019 | IC 027. US 019 020 037 042 050. G & S: Bath mats; Rugs; Floor mats for vehicles. FIRST USE: 20110228. FIRST USE IN COMMERCE: 20190331 |

See Decl. of Nicolas Loufrani in Support of Plaintiff's Motion for TRO ("Loufrani Decl.") ¶ 9 and

Schedule B; see also Compl. [ECF No. 1] ¶ 25.  The Smiley Marks are used in connection with

the design, marketing, and distribution of high-quality goods in the category identified above.  *See*

*id*.

Plaintiff is also the owner of the following copyrights registered in the United States of

America:

| Registration Number | Registration Date | Title of Work |
|---|---|---|
| VAu000446942 | 1999 | Andazia International--Millennium 2000 T-shirts : no. 280-283, 287-289. |
| VAu000446948 | 1999 | Berkshire--Smiley babies outerwear, socks, Smiley rainwear, umbrellas, Smilette : no. BERK001-BER019. |
| VAu000446941 | 1999 | Commonwealth toy--Smiley Babies packaging labels : no. CTN01-CTN05. |
| VAu000304029 | 1998 | Freeze/Millennium 2000 T-shirts : no. FR001-FR118. |
| VAu000446947 | 1999 | Freeze--Millennium 2000 T-shirts : no. FR119-FR168. |
| VAu000446946 | 1999 | Home Group, Inc.--Smiley headwear : no. HG001-HG004. |
| VAu000456386 | 1999 | Jacques Moret Intimates/SHB intimates ... : no. JM045- |

| | | JM068. |
|---|---|---|
| VAu000446943 | 1999 | Maru artwork--Smiley characters, millennium 2000 : no. MARU01-MARU06. |
| VAu000446940 | 1999 | Millennium 2000 socks : no. 6209-6248, 6250-6256. |
| VAu000456387 | 1999 | NTD Apparel, Inc. : no. NTD181-NTD280. |
| VAu000446944 | 1999 | Pro Specialties Group--Millennium 2000 : no. PS005-PS006. |
| VAu000446945 | 1999 | Ralph Marlin--Millennium 2000 boxers : no. RM001-RM005. |
| VAu000440872 | 1998 | "Smiley for kids" December 98. |
| PAu002457240 | 1999 | Smiley forever. |
| PAu002457241 | 1999 | Smiley trend book--fall/winter 2000-01. |

*See* Loufrani Decl.  ¶ 10; Compl. ¶ 32.  The copyrighted works identified in Schedule C to the Golovlova Declaration are collectively referred to herein as the "Copyrighted Works."

Defendants, through the various Internet based e-commerce stores operating under the seller identities identified on Schedule "A" to the Complaint ("Seller IDs"), have advertised, promoted, offered for sale, or sold goods bearing and/or using what Plaintiff has determined to be counterfeits, infringements, reproductions, or colorable imitations of the Smiley Marks and Copyrighted Works.  *See* Loufrani Decl. ¶¶ 15-18; Decl. of Sobrado in Support of Plaintiff's Motion for TRO ("Sobrado Decl.") ¶ 5.

Although each of the Defendants may not copy and infringe each of the Smiley Marks for each category of goods protected and/or Copyrighted Works, Plaintiff has submitted sufficient evidence showing each of the Defendants has infringed at least one or more of the Smiley Marks and/or Copyrighted Works.  *See* Sobrado Decl. ¶ 4, Schedule E.  Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the Smiley Marks or Copyrighted Works.  *See* Loufrani Decl. ¶ 15.

Plaintiff hired a third-party investigator to access Defendants' e-commerce stores operating under each of the Seller IDs, as part of an ongoing investigation into the sale of counterfeit and infringing products.  *See* Loufrani Decl. ¶¶ 5, 15-18.  Plaintiff accessed each of the e-commerce

stores operating under Defendants' Seller IDs, initiated the ordering process for the purchase of a product from each of the Seller IDs, bearing counterfeits of at least one of the Smiley Marks and Copyrighted Works at issue in this action, and requested each product to be shipped to an address in the Southern District of Florida. *See id.*; *see also* Loufrani Decl. ¶ 17.  Plaintiff conducted a review and visually inspected the Smiley branded items for which orders were initiated by Plaintiff's third-party investigator via the Seller IDs and determined the products were nongenuine, unauthorized versions of Plaintiff's products.  *See id.*

## **LEGAL STANDARD**

To obtain a temporary restraining order, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case).  Additionally, a court may issue a temporary restraining order without notice to the adverse party or its attorney only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition [and] (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED. R. CIV. P. 65(b)(1).  *Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer."  *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.,* 415 U.S. 423, 439 (1974).

## ANALYSIS

The declarations Plaintiff submitted in support of their Application for Temporary Restraining Order support the following conclusions of law:

A.      Plaintiff has a strong probability of proving at trial that consumers are likely to be confused by Defendants' advertisement, promotion, sale, offer for sale, and/or distribution of goods bearing and/or using counterfeits, reproductions, or colorable imitations of the Smiley Marks, and that the products Defendants are selling and promoting for sale are copies of Plaintiff's products that bear and/or use copies of the Smiley Marks.

B.      Because of the infringement of the Smiley Marks, Plaintiff is likely to suffer immediate and irreparable injury if a temporary restraining order is not granted.  It appears from the following specific facts, as set forth in Plaintiff's Complaint, Application for Temporary Restraining Order, and accompanying declarations on file, that immediate and irreparable loss, damage, and injury will result to Plaintiff and to consumers before Defendants can be heard in opposition unless Plaintiff's request for *ex parte* relief is granted:

1.      Defendants own or control e-commerce stores operating under their E-commerce Store Names which advertise, promote, offer for sale, and sell products bearing and/or using counterfeit and infringing trademarks in violation of Plaintiff's rights;

2.      There is good cause to believe that more counterfeit and infringing products bearing and/or using Plaintiff's trademarks will appear in the marketplace; that consumers are likely to be misled, confused, and/or disappointed by the quality of these products; and that Plaintiff may suffer loss of sales for their genuine products; and

3.      There is good cause to believe that if Plaintiff proceeds on notice to Defendants of the Application for Temporary Restraining Order, Defendants can easily and quickly change the ownership, or modify, e-commerce store account data and content, change

payment accounts, redirect consumer traffic to other e-commerce store names, and transfer assets and ownership of the E-commerce Store Names, thereby thwarting Plaintiff's ability to obtain meaningful relief.

C.      The balance of potential harm to Defendants in restraining their trade in counterfeit and infringing branded goods if a temporary restraining order is issued is outweighed by the potential harm to Plaintiff, its reputations, and its goodwill as manufacturers and distributors of quality products if such relief is not issued.

D.      The public interest favors issuance of the temporary restraining order to protect Plaintiff's trademark interests and protect the public from being defrauded by the palming off of counterfeit goods.

E.      Under 15 U.S.C. § 1117(a), Plaintiff may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendants' distribution and sale of goods bearing and/or using counterfeits and infringements of the Smiley Marks. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) ("An accounting of profits under § 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'" (quoting *Fuller Brush Prods. Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir. 1962) (alteration in original))).

F.      Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co.*, 51 F.3d at 987 (citing *FTC v. U.S. Oil & Gas Corp.*, 748 F.2d 1431, 1433–34 (11th Cir. 1984)).

G.      In light of the inherently deceptive nature of the counterfeiting business, and the likelihood that Defendants have violated federal trademark laws, Plaintiff has good reason to

believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

## CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** that pursuant to 15 U.S.C. § 1116, Federal Rule of Civil Procedure 65, 28 U.S.C. § 1651(a), and this Court's inherent authority, Plaintiff's Application for Temporary Restraining Order, [ECF No. 5], is **GRANTED**.  A temporary restraining order is entered as follows:

1.      Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order are hereby temporarily restrained:

   a.  From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing and/or using the Smiley Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by Plaintiff.

   b.  From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiff, bearing and/or using the Smiley Marks, or any confusingly similar trademarks; (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using the Smiley Marks, or any confusingly similar trademarks; or (iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled, or held by, or subject to access

by, any Defendant, including, but not limited to, any assets held by or on behalf of any Defendant.

      c.   From using any reproduction, counterfeit, copy, or colorable imitation of the Copyrighted Works in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants.

2.    Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue the use of the Smiley Marks, or any confusingly similar trademarks, or unauthorized copies of the Copyrighted Works on or in connection with all Internet based e-commerce stores owned and operated, or controlled by them, including the Internet based e-commerce stores operating under the Seller IDs.

3.    Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue the use of the Smiley Marks, or any confusingly similar trademarks, within domain name extensions, metatags or other markers within website source code, on any webpage (including as the title of any web page), in any advertising links to other websites, within search engines' databases or cache memory, and any other form of use of such terms that are visible to a computer user or serves to direct computer searches to Internet websites and e-commerce stores registered, owned, or operated by any Defendant, including the e-commerce stores operating under the E-commerce Store Names.

4.    Each Defendant shall preserve copies of all computer files relating to the use of any of the e-commerce stores operating under their E-commerce Store Names and shall take all steps necessary to retrieve computer files relating to the use of the e-commerce stores operating under their E-commerce Store Names that may have been deleted before the entry of this Order.

5.     Upon receipt of notice of this Order, Defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to PayPal, Inc. ("PayPal"); Dunhuang Group, which operates the DHgate.com and DHPay.com platforms; Camel FinTech Inc; ContextLogic, Inc., which operates the Wish.com website ("ContextLogic"); and their related companies and affiliates shall immediately (i) identify all financial accounts and/or sub-accounts associated with the e-commerce stores operating under the E-commerce Store Names, the payment accounts, store numbers, merchant identification numbers, infringing product numbers, and/or e-mail addresses identified on Schedule "A," as well as any other accounts of the same customer(s); (ii) identify all other accounts which transfer funds into the same financial institution account(s) or any of the other financial accounts subject to this Order; (iii) restrain the transfer of all funds, as opposed to ongoing account activity, held or received for Defendants' benefit or to be transferred into their respective financial accounts and any other financial accounts tied thereto; and (iv) immediately divert those restrained funds to a holding account for the trust of the Court.

6.     Upon receipt of notice of this Order, Defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to PayPal; Dunhuang Group, which operates the DHgate.com and DHPay.com platforms; Camel FinTech Inc, ContextLogic; and their related companies and affiliates, shall further, within five business days of receiving notice of this Order, provide Plaintiff's counsel with all data that details (i) an accounting of the total funds restrained and identify the financial account(s) and sub-account(s) which the restrained funds are related to, and (ii) the account transactions related to all funds transmitted into the financial account(s) and sub-account(s) which have been restrained.  Such restraining of the funds and the disclosure of the related financial institution account information shall be made without notice to the account

owners until after those accounts are restrained. No funds restrained by this Order shall be transferred or surrendered by any financial institution, payment processor, bank, escrow service, money transmitter, or marketplace website, including but not limited to, PayPal, Dunhuang Group which operates the DHgate.com and DHPay.com platforms, Camel FinTech Inc, ContextLogic, and their related companies and affiliates for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of this Court.

7.      Any Defendant or financial institution account holder subject to this Order may petition the Court to modify the asset restraint set out in this Order.

8.      This Order shall apply to the E-commerce Store Names, associated e-commerce stores, and any other seller identification names, e-commerce stores, websites, or financial accounts that are being used by Defendants for the purpose of counterfeiting the Smiley Marks at issue in this action and/or unfairly competing with Plaintiff.

9.      As a matter of law, this Order shall no longer apply to any Defendant or associated E-commerce Store Name dismissed from this action or as to which Plaintiff has withdrawn its request for a temporary restraining order.

10.      This Order shall remain in effect until the date for the hearing on the Motion for Preliminary Injunction set forth below, or until such further dates as set by the Court or stipulated by the parties.

11.      Under 15 U.S.C. § 1116(d)(5)(D) and Federal Rule of Civil Procedure 65(c), Plaintiff shall post a bond in the amount of $10,000.00 by **October 31, 2023**, as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further order of the Court. In the Court's discretion, the bond may be subject to increase should an application be made in the interest of justice.

12.      **A telephonic hearing is set before the Court on <u>November 7, 2023, at 1:15 P.M.</u>,** at which time Defendants and/or any other affected persons may challenge the appropriateness of this Order and move to dissolve the same and at which time the Court will hear argument on Plaintiff's requested preliminary injunction.  **The parties are instructed to call 305-990-2559 by no later than <u>1:10 P.M.</u> on November 7, 2023.  The access code is 342002437#.  The Court requires that the parties appear via a landline (i.e., not a cellular phone or a speaker phone), if possible, for clarity**.

13.      After Plaintiff's counsel has received confirmation from the financial institutions regarding the funds restrained as directed herein, Plaintiff shall serve a copy of the Complaint, the Application for Temporary Restraining Order, and this Order, on each Defendant by e-mail via their corresponding e-mail address(es), online contact form(s), or other means of electronic contact provided on the Internet based e-commerce stores operating under the respective E-commerce Store Names, or by providing a copy of this Order by e-mail to the marketplace platform for each of the E-commerce Store Names so that the marketplace platform, in turn, notifies each Defendant of the Order, or by other means reasonably calculated to give notice which is permitted by the Court.   In addition, Plaintiff shall post copies of the Complaint, Application for Temporary Restraining Order, and this Order, as well as all other documents filed in this action on the website located at:

https://www.dropbox.com/scl/fo/1ycie5ipsvg1ux7kbkjpq/h?rlkey=cb4uqlm0cp1klukxz5gc1uegs&dl=0, and shall provide the website address to Defendants via e-mail/online contact form, and such notice so given shall be deemed good and sufficient service thereof.  Plaintiff shall continue to provide notice of these proceedings and copies of the documents on file in this matter to Defendants by regularly updating the website located at:

https://www.dropbox.com/scl/fo/1ycie5ipsvg1ux7kbkjpq/h?rlkey=cb4uqlm0cp1klukxz5gc1uegs&dl=0, or by other means reasonably calculated to give notice which are permitted by the Court.

14.     Additionally, for the purpose of providing additional notice of this proceeding, and all other pleadings, orders, and documents filed herein, the owners, operators and/or administrators of the Internet marketplace websites and/or financial institutions, payment processors, banks, escrow services, or money transmitters, including but not limited to PayPal; Dunhuang Group, which operates the DHgate.com and DHPay.com platforms; Camel FinTech Inc; ContextLogic; and their related companies and affiliates shall, at Plaintiff's request, provide Plaintiff's counsel with any e-mail address known to be associated with Defendants' respective E-commerce Store Names.

15.     Any response or opposition to Plaintiff's Motion for Preliminary Injunction must be filed and served on Plaintiff's counsel forty-eight (48) hours prior to the hearing.  Plaintiff shall file any Reply Memorandum twenty-four (24) hours prior to the hearing.  The above dates may be revised upon stipulation by all parties and approval of the Court.  Defendants are hereby on notice that failure to appear at the hearing may result in the imposition of a preliminary injunction against them pursuant to 15 U.S.C. § 1116(d), FED. R. CIV. P. 65, The All Writs Act, 28 U.S.C. § 1651(a), and the Court's inherent authority.

16.     The Court will consider Plaintiff's request for a preliminary injunction after notice has been provided to Defendants.  *See* FED. R. CIV. P. 65(a)(1) ("The court may issue a preliminary injunction only on notice to the adverse party.").

17.     Given the need for Plaintiff to effect service before Defendants can be heard, the Court finds good cause to extend Federal Rule of Civil Procedure 65(b)(2)'s expiration deadline of fourteen (14) days.  Therefore, this Temporary Restraining Order expires at **2:00 P.M. on November 7, 2023**, unless further extended for good cause.

**DONE AND ORDERED** in Miami, Florida, this 24th day of October, 2023.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**