UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-23799-RAR

**THE SMILEY COMPANY SPRL**,

    Plaintiff,

v.

**THE INDIVIDUALS, PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A,"**

    Defendants.
_____/

**ORDER ON MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT**

**THIS CAUSE** comes before the Court upon Plaintiffs' Motion for Entry of Final Default Judgment [ECF No. 81] ("Motion"), filed on December 26, 2023. A Clerk's Default [ECF No. 69] was entered against certain Defaulting Defendants from the Individuals, Partnerships, or Unincorporated Associations identified on Default Schedule "A" [ECF No. 81-3] and Schedule "B" [ECF No. 81-4], excluding those Defendants dismissed by the Court, *see* [ECF No. 83], hereto (collectively, the "Defendants") on December 11, 2023 because Defendants failed to appear, answer, move to vacate the Clerk's Default or otherwise respond to the Complaint filed on October 5, 2023 [ECF No. 1] despite having been served. *See* Proof of Service [ECF No. 16]. The Court having carefully considered the Motion, the record, the applicable law, and being otherwise fully advised, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff's Motion is **GRANTED** as set forth herein.

Plaintiff sued Defendants for false designation of origin pursuant to § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); common law unfair competition; common law trademark infringement; and copyright infringement.

The Complaint alleges that Defendants are advertising, using, selling, promoting, and distributing, counterfeits and confusingly similar imitations of Plaintiff's registered trademarks and copyrights within the Southern District of Florida by operating the Defendants' Internet based e-commerce stores operating under each of the Seller IDs identified on Default Schedule "A" attached to Plaintiff's Motion for Entry of Final Default Judgment ("Seller IDs").

Plaintiff further asserts that Defendants' unlawful activities have caused and will continue to cause irreparable injury to Plaintiff because Defendants have 1) deprived Plaintiff of its right to determine the manner in which his trademarks are presented to consumers; (2) deceived the public as to Plaintiff's sponsorship of and/or association with Defendants' counterfeit products and the websites on online storefronts through which such products are sold, offered for sale, marketed, advertised, and distributed; (3) wrongfully traded and capitalized on Plaintiff's reputation and goodwill and the commercial value of the Plaintiff's trademarks; and (4) wrongfully damaged Plaintiff's ability to market his branded products and educate consumers about his brand via the Internet in a free and fair marketplace.

In its Motion, Plaintiff seeks the entry of default final judgment against Defendants[1] in an action alleging false designation of origin, common law unfair competition, and common law trademark infringement. Plaintiff further requests that the Court (1) enjoin Defendants unlawful use of Plaintiff's trademarks and copyrights; (2) award Plaintiff damages; and (3) instruct any third

---

[1] Defendants are the Individuals, Partnerships, or Unincorporated Associations identified on Default Schedule "A" of Plaintiff's Motion, and Default Schedule "A" of this Order.

party financial institutions in possession of any funds restrained or held on behalf of Defendants to transfer these funds to the Plaintiff in partial satisfaction of the award of damages.

Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court is authorized to enter a final judgment of default against a party who has failed to plead in response to a complaint. "[A] defendant's default does not in itself warrant the court entering a default judgment." *DirecTV, Inc. v. Huynh,* 318 F. Supp. 2d 1122, 1127 (M.D. Ala. 2004) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Granting a motion for default judgment is within the trial court's discretion. *See Nishimatsu*, 515 F.2d at 1206. Because the defendant is not held to admit facts that are not well pleaded or to admit conclusions of law, the court must first determine whether there is a sufficient basis in the pleading for the judgment to be entered. *See id.; see also Buchanan v. Bowman,* 820 F.2d 359, 361 (11th Cir. 1987) ("[L]iability is well-pled in the complaint, and is therefore established by the entry of default … ."). Upon a review of Plaintiff's submissions, it appears there is a sufficient basis in the pleading for the default judgment to be entered in favor of Plaintiff.

I. FACTUAL BACKGROUND[2]

Plaintiff is the owner of following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (collectively, the "Smiley Marks"):

| Trademark | Reg. No. | Reg. Date | Classes / Goods |
|---|---|---|---|
| SMILEY | 2,747,618 | 08/05/2003 | IC 003. US 001 004 006 050 051 052. G & S: non-medicated cosmetic preparations for slimming purposes, namely, skin creams, skin lotions, [skin pomades, rust removing preparations,] sun-tanning preparations for cosmetic purposes, [fabric softeners for laundry use, shaving soap, cotton sticks for |

---

[2] The factual background is taken from Plaintiff's Complaint, [ECF No. 1], Plaintiff's Motion for Entry of Final Default Judgment and supporting evidentiary submissions.

| | | | |
|---|---|---|---|
| | | | cosmetic purposes, skin whitening creams, laundry bleach, scented wood, floor polish, hair color, hair dyes, hair waxing lotions, artificial eyelashes, shoe care products, namely, shoe wax, shoe polish, and shoe cream, depilatory wax, parquet floor wax, polishing wax for use on furniture and automobiles, leather preservatives, namely, polishing creams and waxes, cosmetic kits comprised of eyelash pencils, eyelid pencils, namely], shampoos, [drain openers, general purpose scouring powders, decolorants for cosmetic purposes, namely, hair decolorants, degreasing preparations not used in the manufacturing process for use on floors, make-up removing preparations, depilatory creams, stains removers, paint removers, rust and mineral removing cleaning preparations, laundry detergents,] toilet water, [anti-static dryers sheets, emery paper, emery cloth, emery boards, polish for furniture and flooring, incense, windscreen cleaning preparations,] essentials oils for personal use[, hair lacquer, hair bleaching preparations, sachets for perfuming linen, hair lotions, false nails, cotton balls for cosmetic purposes, abrasive paper for use on the nails, wallpaper cleaning preparations, paint stripper, pumice stones for personal use, adhesives for cosmetic use, namely, adhesives for use in connection with artificial hair, shaving preparations, varnish-removing preparations]. FIRST USE: 20010226. FIRST USE IN COMMERCE: 20010226 |
| SMILEY | 2,566,529 | 05/07/2002 | IC 028. US 022 023 038 050. G & S: Toys, namely plush stuffed toys and plastic balls, latex balls and squeezable balls [ ; sporting goods, namely knee pad ]. FIRST USE: 19880516. FIRST USE IN COMMERCE: 19880516s |
| SMILEY | 5,453,732 | | IC 003. US 001 004 006 050 051 052. G & S: Bubble bath, Deodorants for personal use, lotions, false nails. FIRST USE: 20150401. FIRST USE IN COMMERCE: 20180125<br><br>IC 004. US 001 006 015. G & S: candles. FIRST USE: 19720717. FIRST USE IN COMMERCE: 20180125 IC 005. US 006 018 044 046 051 052. G & S: Food for babies, adhesive bandages, air deodorant, feminine hygiene pads, additive for nutritional purposes, sanitary napkins, car deodorants, vitamin supplements; babies' disposable diapers. FIRST USE: 19720717. FIRST USE IN COMMERCE: 20180125 |

| | | | |
|---|---|---|---|
| | | | IC 006. US 002 012 013 014 023 025 050. G & S: metal keys for locks. FIRST USE: 19720717. FIRST USE IN COMMERCE: 20180125<br><br>IC 008. US 023 028 044. G & S: Spoons, hand tools, beard clippers, scissors, nail clippers, hair removing tweezers, ice picks, nail files, manicure sets, hammers, pedicure sets, pliers, electric and non-electric razors, screwdrivers and drills; electric and non-electric flat irons. FIRST USE: 19720717. FIRST USE IN COMMERCE: 20180125<br><br>IC 009. US 021 023 026 036 038. G & S: Weighing apparatus, scales, calculating machines, sound amplifiers, anti-glare glasses, computer terminals, electric, neon or luminous signs, photographic cameras, magnetic encoded cards, cartridges for video games, life jackets, computer keyboards, electrical connectors, contact lenses, electrical sockets, eyeglass cases, blank magnetic data carriers, fire extinguishers, loudspeakers, telephone apparatus, sunglasses, computer memories, computer peripheral mouse pads, computer mouse, television sets, video cameras, and video game cartridges. FIRST USE: 20121201. FIRST USE IN COMMERCE: 20180125<br><br>IC 014. US 002 027 028 050. G & S: Precious metals and their alloys sold in bulk, clocks, works of art of precious metal, jewelry, jewelry boxes, earrings, watches, bracelets, cuff links, brooches, necklaces. FIRST USE: 20150601. FIRST USE IN COMMERCE: 20180125<br>IC 016. US 002 005 022 023 029 037 038 050. G & S: Adhesive tapes for stationery or household purposes, posters, photo albums, scrapbooks, lithographic prints, stickers, loose-leaf binders, boxes of cardboard or paper, rubber stamps, calendars, printing sewing patterns, note books, business cards, postcards, tags for index cards, iron-on transfers and plastic transfers, decalcomanias, graphic art reproductions, stationery folders, writing materials, namely, note books, post cards, ball-point pens, anniversary books, appointment books, autograph books, baby books, sketch books, sketch pads, bookmarks, daily planners, date books, address books, diaries, engagement books, envelopes, |

|  |  |  | electric and non- electric erasers, fountain pens, pen or pencil holders, pen or pencil trays, pencils, artists' pencils, drawing pencils, pencil boxes, pencil cases, pen cases, stationery, and envelopes, rubber erasers, wrapping paper, pencils, stationery envelopes, blank or partially printed paper labels, announcement cards, writing paper, school supplies, namely, notebooks, pencil cases, toilet paper, pictures, printed matter, namely, magazines in the field of art, lithographs, table linen of paper, handkerchiefs of paper, stationery, paper stationery, paper banners, paper bags, unmounted photographs, art prints, pen and pencil trays, printed publications, namely, magazines, newspapers, graphic art reproductions, plastic or paper envelopes, bags and pouches for merchandise packaging, writing pads, fountain pens, and paper or plastic transparencies, paper towels, embroidery design patterns, table mats of paper, pencil sharpeners. FIRST USE: 20130901. FIRST USE IN COMMERCE: 20180125<br><br>IC 021. US 002 013 023 029 030 033 040 050. G & S: Combs, toilet brushes, water troughs, thermal insulated containers for food, terra-cotta or glass, figurines, table plates not of precious metal, brooms, cocktail picks, drinking flasks for travelers, drinking vessels, beer mugs, soap boxes, dispensing paper towels for household use, non-electric kettles, bottles sold empty, bottle openers, pitchers not of precious metal, non-electric toothbrushes, perfume burners, coffee services, not of precious metal, egg cups not of precious metal, beverage glassware, jugs, cookery molds, cooking utensils, toothpicks, cutting boards for the kitchen, trivets, toilet paper holders, soap dispensers, sponges for household purposes, scouring sponges for toilets, earthenware basins in the nature of bowls, household utensils, flower pots; gloves for household purposes, gloves for gardening, ice buckets, non-electric portable coolers for food and beverages, goblets, not of precious metal, mugs, not of precious metal, bottle- gourds, not of precious metal, crumb trays, dishes, soap holders, sponge holders, ironing boards, pepper shakers, garbage cans, trash cans, napkin rings, thermal insulated bags for food or beverages, statutes, statuettes, table plates, napkin holders, non-metal piggy banks, earthenware mugs, drinking glasses, |

| | | | |
|---|---|---|---|
| | | | tableware services not of precious metal. FIRST USE: 20130901. FIRST USE IN COMMERCE: 20180125<br><br>IC 025. US 022 039. G & S: Clothing, namely, suits, dresses, t-shirts, sweatshirts, raincoats, shorts, stockings, cloth bibs, berets, hosiery, boots, suspenders, pants, baseball caps, golf caps, athletic shoes, masquerade costumes, hats, babies pants, neckties, sashes for wear, scarves, gloves, layettes, slippers, ear muffs, aprons, sportswear, namely, jogging suits, and training suits. FIRST USE: 20121201. FIRST USE IN COMMERCE: 20180125<br><br>IC 026. US 037 039 040 042 050. G & S: Hair accessories, electric hair curlers. FIRST USE: 19720717. FIRST USE IN COMMERCE: 20180125<br><br>IC 027. US 019 020 037 042 050. G & S: carpets. FIRST USE: 20141201. FIRST USE IN COMMERCE: 20180125<br><br>IC 028. US 022 023 038 050. G & S: Games, playthings, namely, toys in the nature of flying disks, sporting articles, golf balls, handballs, playground balls, soccer balls, baseballs, basketballs, bowling balls, footballs, tennis balls, rubber balls, sports balls, table tennis balls, volley balls, beach balls balloons, toys, namely, jigsaw puzzles; Christmas tree ornaments, party favors in the nature of small toys; namely, confetti. FIRST USE: 20121201. FIRST USE IN COMMERCE: 20180125<br><br>IC 029. US 046. G & S: Meat. FIRST USE: 19720717. FIRST USE IN COMMERCE: 20180125<br><br>IC 030. US 046. G & S: Sugar, pasta, corn flakes, chewing gum. FIRST USE: 20170301. FIRST USE IN COMMERCE: 20180125<br><br>IC 032. US 045 046 048. G & S: Mineral and aerated waters, fruit juices. FIRST USE: 19720717. FIRST USE IN COMMERCE: 20180125<br><br>IC 034. US 002 008 009 017. G & S: Cigarette cases, cigarette lighters, ashtrays not of precious metal, cigarette holders, not of precious metal, ashtrays of |

| | | | |
|---|---|---|---|
| | | | precious metal for smokers. FIRST USE: 20141201. FIRST USE IN COMMERCE: 20180125 |
| | | | IC 035. US 100 101 102. G & S: Advertising and marketing. FIRST USE: 20150601. FIRST USE IN COMMERCE: 20180125 |
| | | | IC 036. US 100 101 102. G & S: Credit card services, monetary exchange. FIRST USE: 19720717. FIRST USE IN COMMERCE: 20180125 |
| | | | IC 038. US 100 101 104. G & S: Telecommunication services, namely, personal communication. FIRST USE: 20170701. FIRST USE IN COMMERCE: 20180125 |
| SMILEY | 2,970,055 | 07/19/2005 | IC 003. US 001 004 006 050 051 052. G & S: Soaps, bath gels, makeup, perfumes, body lotions, nail care preparations, cosmetic preparations for skin renewal, hair shampoos, hair gel. FIRST USE: 20010226. FIRST USE IN COMMERCE: 20010226 |
| SMILEY | 3,016,430 | 11/15/2005 | IC 009. US 021 023 026 036 038. G & S: Downloadable computer software program for use in attaching, icons or other symbols, in e-mail correspondence and instant messaging. FIRST USE: 20001200. FIRST USE IN COMMERCE: 20001200 |
| SMILEY | 2,801,529 | 12/30/2003 | IC 025. US 022 039. G & S: Clothing, namely, pullovers, [trousers] and shirts. FIRST USE: 19700000. FIRST USE IN COMMERCE: 19700000 |
| ☺ | 5,348,135 | 12/05/2017 | IC 016. US 002 005 022 023 029 037 038 050. G & S: Printed matter, namely, children's books, stationery, greeting cards, note cards, post cards, posters, newspapers, printed calendars, printed forms, printed invitations, photo albums, scrapbooks, photographs; bookbinding materials, namely, bookbinding papers or cloth, bookbinding adhesive tape or glue; adhesive tapes for stationery or household purposes; artists' materials, namely, artists' paintbrushes, typeset printing blocks, printing type, art pads, art paper, paper, cardboard, dressmaking patterns, drawings, watercolors, paintings both framed and unframed; lithographic or engraved art objects; writing implements, namely, pens, pencils, fountain pens, artists' pencils; drawing instruments, namely, charcoal pencils, drawing pencils, pencil cases; typewriters and office requisites except furniture, namely, magnetic boards, file folders, desktop stationery cabinets; |

| | | | |
|---|---|---|---|
| | | | Printed instructional, educational, and teaching materials in the field of primary education; cardboard or paper boxes; paper products, namely, paper handkerchiefs, paper towels, paper table linen, toilet paper, babies' disposable napkins of paper and cellulose; bags, namely, paper or plastic for use as gift bags, paper bags or pouches, paper and plastic bags for merchandise packaging purposes, paper and plastic garbage bags; pamphlets in the field of fashion, home, decorating and licensing; prospectuses in the field of fashion, home, decorating and licensing<br>IC 018. US 001 002 003 022 041. G & S: Leather and imitation leather, animal skins and hides; trunks and suitcases; umbrellas, parasols and walking sticks; whips, harness and saddlery; wallets, purses not of precious metal; handbags, backpacks, wheeled bags; sports bags for climbers; sports bags for campers; traveling bags, beach bags, school bags, unfitted vanity cases; collars and clothing for animals, namely, pet clothing and collars; mesh shopping bags, mesh shopping nets for use in an automobile; leather bags or pouches |
| SMILEY | 6,428,755 | 05/14/2019 | IC 027. US 019 020 037 042 050. G & S: Bath mats; Rugs; Floor mats for vehicles. FIRST USE: 20110228. FIRST USE IN COMMERCE: 20190331 |

*See* Compl. ¶ 25.

Plaintiff is also the owner of following copyrighted works, which are valid and registered in the United States with the U.S. Copyright Office: (collectively the "Copyrighted Works"):

| Registration Number | Registration Date | Title of Work |
|---|---|---|
| VAu000446942 | 1999 | Andazia International--Millennium 2000 T-shirts : no. 280-283, 287-289. |
| VAu000446948 | 1999 | Berkshire--Smiley babies outerwear, socks, Smiley rainwear, umbrellas, Smilette : no. BERK001-BER019. |
| VAu000446941 | 1999 | Commonwealth toy--Smiley Babies packaging labels : no. CTN01-CTN05. |
| VAu000304029 | 1998 | Freeze/Millennium 2000 T-shirts : no. FR001-FR118. |
| VAu000446947 | 1999 | Freeze--Millennium 2000 T-shirts : no. FR119-FR168. |

| VAu000446946 | 1999 | Home Group, Inc.--Smiley headwear : no. HG001-HG004. |
| VAu000456386 | 1999 | Jacques Moret Intimates/SHB intimates ... : no. JM045-JM068. |
| VAu000446943 | 1999 | Maru artwork--Smiley characters, millennium 2000 : no. MARU01-MARU06. |
| VAu000446940 | 1999 | Millennium 2000 socks : no. 6209-6248, 6250-6256. |
| VAu000456387 | 1999 | NTD Apparel, Inc. : no. NTD181-NTD280. |
| VAu000446944 | 1999 | Pro Specialties Group--Millennium 2000 : no. PS005-PS006. |
| VAu000446945 | 1999 | Ralph Marlin--Millennium 2000 boxers : no. RM001-RM005. |
| VAu000440872 | 1998 | "Smiley for kids" December 98. |
| PAu002457240 | 1999 | Smiley forever. |
| PAu002457241 | 1999 | Smiley trend book--fall/winter 2000-01. |

*See* Compl. ¶ 32. The Smiley Marks and Copyrighted Works are used in connection with the design, marketing, and distribution of high-quality goods in at least the categories identified with respect to the Smiley Trademarks. *See* Declaration of Nicolas Loufrani ("Loufrani Decl.") [ECF No. 5-3] ¶ 11.

Although each Defendant may not copy and infringe each of Plaintiff's copyrights and trademarks for each category of goods protected, Plaintiff has submitted sufficient evidence showing each Defendant has infringed the Smiley Marks and Copyrighted Works for at least at least one category of goods. *See* Loufrani Decl. ¶¶ 15–18; Schedule D to Declaration of Richard Guerra in support Motion for Temporary Restraining Order ("Sobrado Decl.") (ECF Nos. 5-7 – 5-12). Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the of the Smiley Marks or Copyrighted Works. Compl. ¶¶ 42, 78.

As part of his ongoing investigation regarding the sale of counterfeit and infringing products, Plaintiff hired a third party investigatory to access Defendants' Internet based e-commerce stores operating under each of the Seller IDs. Loufrani Decl. ¶ 16. The third-party

investigator initiated orders from each Seller IDs for the purchase of various products, all bearing, or suspected of bearing, counterfeits of the Smiley Marks and Copyrighted Works, and requested each product to be shipped to an address in the Southern District of Florida. *Id*. ¶¶ 17–18; Schedule D to Sobrado Decl. (ECF Nos. 5-7–5-12). Accordingly, Defendants' Goods are being promoted, advertised, offered for sale, and sold by Defendants within this district and throughout the United States. A representative for Plaintiff personally analyzed the SMILEY-branded items wherein orders were initiated via each of the Seller IDs by reviewing the e-commerce stores operating under each of the Seller IDs, or the detailed web page captures and images of the items bearing the Smiley Marks, and concluded the products were non-genuine, unauthorized Smiley products. Loufrani Decl. ¶¶ 17–18.

## II.   ANALYSIS

### A.   Claims

#### 1.   Trademark Counterfeiting and Infringement Pursuant to § 32 of the Lanham Act (15 U.S.C. § 1114) (Count I)

Section 32 of the Lanham Act, 15 U.S.C. § 1114, provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark: which is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114. In order to prevail on its trademark infringement claim under Section 32 of the Lanham Act, Plaintiff must demonstrate that (1) it had prior rights to the mark at issue; and (2) Defendants adopted a mark or name that was the same, or confusingly similar to Plaintiff's trademark, such that consumers were likely to confuse the two. *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001) (citing *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 360 (11th Cir. 1997)).

### 2. False Designation of Origin Pursuant to § 43(A) of the Lanham Act (15 U.S.C. § 1125(a)) (Count II)

To prevail on a claim for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), Plaintiff must prove that Defendants used in commerce, in connection with any goods or services, any word, term, name, symbol or device, or any combination thereof, or any false designation of origin that is likely to deceive as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval, of Defendants' services by Plaintiff. *See* 15 U.S.C. § 1125(a)(1). The test for liability for false designation of origin under 15 U.S.C. § 1125(a) is the same as for a trademark counterfeiting and infringement claim – i.e., whether the public is likely to be deceived or confused by the similarity of the marks at issue. *See Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 780 (1992).

### 3. Common Law Unfair Competition and Trademark Infringement (Counts III and IV)

Whether a defendant's use of a Plaintiff's trademarks created a likelihood of confusion between the Plaintiff's and the defendant's services or goods is also the determining factor in the analysis of unfair competition under Florida common law. *Rolex Watch U.S.A., Inc. v. Forrester*, No. 83-cv-8381, 1986 WL 15668, at *3 (S.D. Fla. Dec. 9, 1987) ("The appropriate test for determining whether there is a likelihood of confusion, and thus trademark infringement, false designation of origin, and unfair competition under the common law of Florida, is set forth in *John H. Harland, Inc. v. Clarke Checks, Inc.*, 711 F.2d 966, 972 (11th Cir. 1983)."); *see also Boston Prof'l Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1010 (5th Cir. 1975) ("As a general rule . . . the same facts which would support an action for trademark infringement would also support an action for unfair competition.").

The analysis of liability for Florida common law trademark infringement is the same as the analysis of liability for trademark infringement under § 32(a) of the Lanham Act. *See PetMed Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1217-18 (S.D. Fla. 2004).

### 4. Copyright Infringement (Count V)

"A claim for copyright infringement consists of only two elements: 1) a plaintiff must show that the plaintiff owns a valid copyright; and 2) that the defendant has engaged in unauthorized copying." *Heralds of Gospel Foundation, Inc. v. Varela*, No. 17-cv-22281, 2017 WL 3868421, at *3 (S.D. Fla. June 23, 2017) (*citing Roig v. Star Lofts on the Bay Condominium Ass'n, Inc.*, No. 11-cv-20421, 2011 WL 6178882, at *2 (S.D. Fla. Dec. 12, 2011)). "The copying must be so extensive that there is a substantial similarity between the defendant's work and the protectible elements of the plaintiff's work." *Id*. (*citing Latele Television, C.A. v. Telemundo Commc'ns Grp., LLC*, No. 12-cv-22539, 2015 WL 427817, at *5 (S.D. Fla. Feb. 2, 2015).

### B.     Liability

The well-pled factual allegations of Plaintiff's Complaint properly allege the elements for each of the claims described above. Moreover, the factual allegations in Plaintiff's Complaint have been substantiated by sworn declarations and other evidence and establish Defendants' liability under each of the claims asserted in the Complaint. *See*, Loufrani Decl., ¶¶ 9–22; Schedule D to Guerra Decl. (ECF Nos. 14-1–14-4). Accordingly, default judgment pursuant to Federal Rule of Civil Procedure 55 is appropriate.

### C.     Injunctive Relief

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law. *See* 15 U.S.C. § 1116(a). Indeed, "[i]njunctive relief is the remedy of

choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509-10 (S.D. Fla. 1995) (citing *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988)). Moreover, even in a default judgment setting, injunctive relief is available. *See, e.g., PetMed Express, Inc.*, 336 F. Supp. 2d at 1222-23. Defendants' failure to respond or otherwise appear in this action makes it difficult for Plaintiff to prevent further infringement absent an injunction. *See Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease. Therefore, plaintiff is entitled to permanent injunctive relief.")

Permanent injunctive relief is appropriate where a plaintiff demonstrates that (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 392-93 (2006). Plaintiffs have carried their burden on each of the four factors. Accordingly, permanent injunctive relief is appropriate.

Specifically, in trademark cases, "a sufficiently strong showing of likelihood of confusion…may by itself constitute a showing of a substantial threat of irreparable harm." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage LS & Co.'s business reputation and might decrease its legitimate sales."). Plaintiff's Complaint alleges that Defendants' unlawful actions have caused Plaintiff irreparable injury and will continue to do so if Defendants are not permanently enjoined. *See* Compl. ¶ 48. Further, the Complaint alleges, and the unauthorized Smiley products sold, offered for sale, marketed, advertised, and distributed by

Defendants are nearly identical to Plaintiff's genuine products and that consumers viewing Defendants' counterfeit products would actually confuse them for Plaintiff's genuine products. *See id.* ¶ 59.

Plaintiff has no adequate remedy at law so long as Defendants continue to operate the Seller IDs because Plaintiff cannot control the quality of what appears to be its legitimate products in the marketplace. An award of monetary damages alone will not cure the injury to Plaintiff's reputation and goodwill that will result if Defendants' infringing and counterfeiting and infringing actions are allowed to continue. Moreover, Plaintiff faces hardship from loss of sales and its inability to control its reputation in the marketplace. By contrast, Defendants face no hardship if they are prohibited from the infringement of Plaintiff's trademarks, which are illegal acts.

Finally, the public interest supports the issuance of a permanent injunction against Defendants to prevent consumers from being misled by Defendants' counterfeit products. *See Nike, Inc. v. Leslie*, No. 85-cv-960, 1985 WL 5251, at *1 (M.D. Fla. June 24, 1985) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior."). The Court's broad equity powers allow it to fashion injunctive relief necessary to stop Defendants' infringing activities. *See, e.g., Swann v. Charlotte-Mecklenburg Bd. of Educ.,* 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for . . . [t]he essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case." (citation and internal quotation marks omitted)); *United States v. Bausch & Lomb Optical Co.*, 321 U.S. 707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole.").

Defendants have created an Internet-based infringement scheme in which they are profiting from their deliberate misappropriation of Plaintiff's rights. Accordingly, the Court may fashion injunctive relief to eliminate the means by which Defendants are conducting their unlawful activities.

### D. Damages for the Use of Infringing Marks

The damages available under Section 35 of the Lanham Act are set forth in the Section of that Act entitled "Recovery for violation of rights," and provides,

> (a) Profits; damages and costs; attorney fees
> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

15 U.S.C. § 1117(a).

Thus, the Lanham Act provides that a plaintiff who prevails in a trademark infringement action "shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a).

"The Eleventh Circuit has made clear that in assessing damages under the Act the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as

actual damages, not exceeding three times such amount." *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, No. 16-cv-21203, 2018 WL 10322164, *3 (S.D. Fla. Jan. 13, 2018). "Further, if the court finds that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for the sum the court finds to be just, according to the circumstances of the case." *Id.* (citing *Slep-Tone Entertainment Corp., v. Johnson*, 518 F. App'x 815, 819 (11th Cir. 2013); 15 U.S.C. § 1117(a)). "Thus, a district court has considerable discretion to award damages that are appropriate to the unique facts of the case and when the court concludes that an award of profits is 'excessive,' the Act expressly provides that it may award an amount of damages as it shall find to be just." *Id.* "Finally, in *Burger King v. Mason*, 855 F.2d 779 (11th Cir. 1988), the Eleventh Circuit stated, '... all monetary awards under Section 1117 are 'subject to the principles of equity,' [and] ... no hard and fast rules dictate the form or quantum of relief.'" *Id.* (citation omitted).

Further, "the Eleventh Circuit has defined an exceptional case as a case that can be characterized as malicious, fraudulent, deliberate and willful … or a case where there is 'evidence of fraud or bad faith.'" *Rain Bird Corp. v. Taylor*, 665 F. Supp. 2d 1258, 1271 (N.D. Fla. 2009) (citing *Dieter v. B & H Indus. of S.W. Fla., Inc.,* 880 F.2d 322, 329 (11th Cir. 1989); *Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.*, 675 F.2d 1160, 1169 (11th Cir. 1982); *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 253 F.3d 1332 (11th Cir. 2001)).

Here, the allegations in the Complaint, which are taken as true, clearly establish Defendants intentionally copied the Smiley Marks for the purpose of deriving the benefit of Plaintiff's world-famous reputation.

The evidence in this case demonstrates that each Defendant sold, promoted, distributed, advertised, and/or offered for sale products bearing marks which were in fact confusingly similar

to at least one of the Smiley Marks. Based on the above considerations, Plaintiff suggests the Court award statutory damages of $30,000.00 against each Defendant. The award should be sufficient to deter Defendants and others from continuing to counterfeit or otherwise infringe Plaintiff's trademarks, compensate Plaintiff, and punish Defendants, all stated goals of 15 U.S.C. § 1117(a). The Court finds that this award of damages falls within the permissible statutory range under 15 U.S.C. § 1117(a) and is just.

E.   **Damages for Common Law Unfair Competition and Trademark Infringement**

Plaintiff's Complaint further sets forth a cause of action under Florida's common law of unfair competition (Count III) and trademark infringement (Count IV). Judgment on Count III and Count IV are also limited to the amount awarded pursuant to Count I and Count II and entry of the requested equitable relief.

F.   **Damages for Copyright Infringement**

A plaintiff may elect to recover statutory damages per infringed work. *See* 17 U.S.C. § 504(c)(1) ("[T]he copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages…"); *Arista Records*, 298 F. Supp. 2d at 1312. With respect to any one work, the Copyright Act permits a minimum award of $750 and a maximum award of $30,000. 17 U.S.C. § 504(c)(1). In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000. 17 U.S.C. § 504(c)(2). A district court has broad discretion in determining statutory damages and should consider both the willfulness of the defendant's conduct and the deterrent value of the sanction imposed. *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990); *see also United Feature Syndicate, Inc. v. Sunrise Mold*

*Co., Inc.*, 569 F. Supp. 1475, 1480 (S.D. Fla. 1983) ("In determining statutory damages to award plaintiff, the Court must award an amount which it considers just."). In this regard, "the Court's aim is not just compensating the Plaintiffs for their injury but also to discourage wrongful conduct." *Milk Monkey Music v. Oakland Park Entertainment Corp.*, No. 09-cv-61416, 2009 WL 4800272, at *2 (S.D. Fla. Dec. 11, 2009) (citing *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952)). This is even true where the violation is not injurious and unprofitable. *See F.W. Woolworth Co.*, 344 U.S. at 233.

Courts may award statutory damages "without holding an evidentiary hearing based upon affidavits and other documentary evidence if the facts are not disputed." *Perry Ellis Int'l, Inc. v. URI Corp.*, No. 06-cv-22020, 2007 WL 3047143, at *1 (S.D. Fla. Oct. 18, 2007). Although the Court is permitted to conduct a hearing on a default judgment regarding damages pursuant to Fed. R. Civ. P. 55(b)(2)(B), an evidentiary hearing is not necessary where there is sufficient evidence in the record to support the request for damages. *See SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005).

Here, the allegations in the Complaint, which are taken as true, clearly establish Defendants' infringement of the Copyrighted Works was committed willfully. As such, the Court is well within its discretion to award $25,000 as statutory damages to ensure that Defendants do not continue their intentional and willful counterfeiting of the Copyrighted Works. This award is within the permissible statutory range under 17 U.S.C. § 504(c) and is just.

## **CONCLUSION**

Based on the foregoing, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion [ECF No. 81] is **GRANTED** against those Defendants listed in Schedule "A" [ECF No. 81-3] and "B"

[ECF No. 81-4], excluding those Defendants dismissed by the Court, *see* [ECF No. 83]. Final Default Judgment will be entered by separate order.

**DONE AND ORDERED** in Miami, Florida, this 29th day of December, 2023.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**